IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BROCK E. OKENNARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-51-GPM-DGW |
| ) | |
| DAVID SZOKE, P. CASTILLO, L. DUNCAN, ) | |
| and DR. HOWARD, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for a Preliminary Injunction filed by Plaintiff, Brock E. Okennard on January 17, 2013 (Doc. 42). For the reasons set forth below, it is **RECOMMENDED** that the Motion be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff suffers from a degenerative eye condition known as Keratoconus which can cause blurry vision, impaired night vision, sensitivity to light, headaches, and corneal scarring (Megan Alberts Declaration ¶ 5, (Doc. 42-3)). Mild cases can be corrected with contact lenses while more advanced cases can be treated with corneal transplant surgery (Alberts Dec. ¶ 5). Plaintiff was diagnosed with this condition in 2005 and underwent corneal transplant surgery in his left eye in 2006 (while incarcerated) (Declaration of Brock E. Okennard, ¶¶ 2-3). Plaintiff's condition is currently being treated by Dr. Derek Melton, an Optometrist, who examined Plaintiff most

recently on January 31, 2013 (Defendants' Exhibit F (Doc. 47-6)).  Plaintiff currently wears contact lenses and is prescribed a variety of eye drops to treat his condition (Def. Ex. E (Doc. 47-5), Def. Ex. F, pp. 17-18)[1].

Dr. William Fix, an Optometrist examined Plaintiff on October 27, 2010 (Declaration of William Fix, ¶ 6).  Dr. Fix concluded that Plaintiff suffers from mild to advanced Keratoconus, that he is legally blind, and that he should receive a corneal transplant, presumably for both eyes (Fix Dec. ¶¶5, 7).  Dr. Fix also states that without the surgery Plaintiff's "vision may continue to deteriorate and may result and [sic] permanent and uncorrectable loss of vision" (Fix Dec. ¶ 9). Dr. Alberts examined Plaintiff on March 7, 2011 (Alberts Dec. ¶ 6).  She found that Plaintiff suffered from moderate to advanced Keratoconus and that he "needed to be seen by a qualified corneal specialist and considered for a corneal transplant" (Alberts Dec. ¶¶ 7-8).

Plaintiff filed a Motion for Preliminary Injunction on January 17, 2013 (Doc. 42) seeking an injunction that would compel Defendants to immediately transfer Plaintiff to the Federal Medical Center for evaluation and treatment by a corneal specialist.   This Court held a hearing on the Motion for Preliminary Injunction on February 5, 2013 in which Plaintiff appeared by attorney Michael C. Hermann and Defendants Szoke, Castillo, and Duncan appeared by attorney David J. Pfeffer.  At the hearing, Plaintiff modified his requested relief to one seeking an order compelling Defendants to administer a Visual Evoked Potential Test ("VEP Test") which would then be used to determine whether Plaintiff is eligible for corneal transplant surgery, to be done on both eyes.

On November 19, 2006, Plaintiff underwent a corneal transplant of his left eye and was fitted for contact lenses late in 2007 (Def. Ex. H, pp. 2, 3, 9; Def. Ex. G, p. 2).  Plaintiff was seen

---

[1] The page numbers associated with Defendants' Exhibits are those generated by CM/ECF.

for various follow-up examinations from 2007 to 2013[2] (Def. Ex. G and F). There are notations in Plaintiff's medical records that he is non-compliant with using the prescribed drops and wearing the prescribed contact lenses (Def. Ex. G, pp. 3, 13, Def. Ex. F, pp. 10, 17, 26). Notes also indicate that Plaintiff was informed by various providers and on various dates that additional surgery was not recommended (Def. Ex. G, p. 4, Def. Ex. H, p. 10); and, more recently, Dr. Melton noted "[s]till no obvious need for anything other than the Rx'd meds" (Def. Ex. F, p. 3).

On May 16, 2011, however, Dr. Szoke issued a Referral Request (a "BP-A0770") recommending that Plaintiff be considered for a second corneal transplant of his left eye and evaluation of whether he should undergo the surgery in his right eye (Def. Ex. B, pp. 4-5). The request was denied by Dr. Allen, the Chief of Health Programs at the Office of Medical Designations and Transportation ("OMDT"), on June 20, 2011 with the note that the request will be reconsidered once Plaintiff undergoes the VEP Test and if medical providers "clarify his [Plaintiff's] compliance with current treatments" (Def. Ex. B, p. 7).

Prior to Dr. Allen's response, Plaintiff did undergo the VEP Test – he "failed" the test because he was not able to see a "red dot" used in the test (Def. Ex. B, pp. 8, 10). At the hearing, the parties noted that the test measures brain wavelengths – which can only be measured if Plaintiff sees or focuses on the red dot. According to Dr. Szoke, Plaintiff's "inability to visualize" resulted in the conclusion that Plaintiff is not a viable candidate for a corneal transplant (Def. Ex. B, p. 3, ¶ 6). Dr. Szoke did not issue another Referral Request thereafter because "optometry consultations continue to indicate that he is not a candidate for a corneal transplant, based upon the results of his physical examination and his history of non-compliance with recommended treatments" (Def. ex. B, p. 3, ¶ 7).

---

[2] The exhibits provided by Defendant do not reveal medical records from 2009.

Each of the served Defendants have submitted an affidavit indicating that they are without authority to transfer Plaintiff to the Federal Medical Center – that decision is made by the OMDT -- nor do they have the authority to order the corneal transplant surgery (Def. Ex. A, ¶¶ 3, 11; Def. Ex. B ¶ 4; Def. Ex. C ¶ 3; Def. Ex. D ¶3).  Dr. Szoke, however, can request and recommend that the OMDT transfer Plaintiff and schedule surgery by using Form BP-0770, as he did in 2011.

## CONCLUSIONS OF LAW

### LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)).  The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit."  *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).   Plaintiff has the burden of demonstrating:

  1. a reasonable likelihood of success on the merits;
  2. no adequate remedy at law; and
  3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).  As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning."  *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).  The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."  *Id.*   In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."   18 U.S.C. §

3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

The original relief that Plaintiff requested in his Motion was transfer to a Federal Medical Center for evaluation and treatment by a corneal specialist. Defendants have averred that they are without the authority to transfer Plaintiff or mandate that he be seen by a specialist (or that he be scheduled for surgery). Defendants therefore would be unable to comply with any injunction and it would be unlikely that Plaintiff would able to enforce such an injunction against them. *See e.g. United States v. Rylander*, 460 U.S. 752, 757 (1983) (noting the defense of impossibility in civil contempt proceedings). Perhaps recognizing this hurdle, Plaintiff has modified his requested relief to seeking an injunction that would compel Defendants, and primarily Dr. Szoke, to schedule Plaintiff for another VEP test, the result of which would then be used as a basis for seeking additional corneal transplant surgeries. Notwithstanding this change is requested relief, Plaintiff is still not entitled to a preliminary injunction.

First, Plaintiff has not persuaded this Court that there is a likelihood of success on the merits. The Second Amended Complaint (Doc. 50) alleges that Defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical need, to wit, Keratoconus. In order to make out his claim, Plaintiff must show that Defendants "knew of a serious risk to the prisoner's health and consciously disregard[ ] that risk." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). With respect to medical professionals, Plaintiff must show that they make decisions that represent "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person

responsible actually did not base the decision on such judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Plaintiff argues that Defendants are deliberately indifferent because of the delay in treatment of the Keratoconus and specifically the failure to provide an evaluation by a corneal specialist. Plaintiff has presented the affidavits of two Optometrists who recommend corneal transplant surgery (Dr. Fix) or at least an evaluation to determine whether he should receive the surgery (Dr. Alberts). Plaintiff himself declares that his eyesight has deteriorated since April, 2009, that he is photo-sensitive, has blurry vision, and that he suffers from sharp pain on a daily basis (Okennard Dec. ¶ 10).

Dr. Melton, however, has determined that surgery is not a viable option. Dr. Szoke similarly declares that Plaintiff's inability to complete the VEP test (that is, the fact that he failed the test) makes him an unviable candidate for surgery and recent clinical notes (from Dr. Melton) further indicate that surgery is not advisable. It is unclear to the Court whether evaluation by a corneal specialist would aid Plaintiff in acquiring a corneal transplant when he failed the very test used to determine his eligibility for surgery. Plaintiff's symptoms are being treated with medication (eye drops) and contacts. Notwithstanding evidence of continuing worsening of Plaintiff's condition, the medical notes indicate that Plaintiff's condition is chronic and "not improved/same." Thus, there is evidence in the record that Plaintiff's condition is not getting any worse. There is also evidence in the record that Plaintiff's assertions of pain, photo-sensitivity, and worsening eyesight may be exaggerated.[3] (Def. Ex. F, p. 2, 10). And, it is clear from the

---

[3] For example, Dr. Fix noted that Plaintiff's vision on October 27, 3010 was 20/200 (Fix Dec. ¶ 7). On January 31, 2013, Dr. Melton noted that Plaintiff was writing "in very legible, 20/200-400 sized (near chart-like) letters and word" (Def. Ex. F, p. 2). This finding would undercut Plaintiff's statement that his vision is getting progressively worse "each day." A theme of Defendants' argument is that Plaintiff is malingering – that he is exaggerating his symptoms in order to get the treatment he desires.

medical records that Plaintiff is and was receiving medication and periodic examinations with respect to his condition since 2006. This Court can only conclude from the evidence before it that Plaintiff only has a negligible chance of winning on the merits.[4] At most, Plaintiff will only be able to show that he is unhappy about his course of treatment, routine check-ups, eye drops, and contacts, and that he wants more aggressive treatment; not that Defendants are deliberately indifferent to his needs. *See Jackson*, 541 F.3d at 697 ("There is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field."). There is no showing, for example, that Defendant's ignored Plaintiff's condition or treated him in a manner that was wholly inadequate. There is no evidence that any doctor or medical professional sued in this matter have made any decisions that are a substantial departure from accepted professional standards.

The Court is also unconvinced that the irreparable harm, on-going substantial pain and eventual blindness, will be cured with an injunction mandating that Plaintiff re-take the VEP test. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-507 (1959) ("The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.") Certainly, blindness and significant pain are irreparable harms that would have no adequate remedy at law. *Graham v. Medical Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("Irreperable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it." (quotation marks, internal editing marks, and citation omitted)). However, the evidence reveals that Plaintiff's conditions are chronic, not worsening, and that he is not eligible for the ultimate relief that he wants: corneal transplant surgery. An injunction mandating the administration of the VEP test

---

[4] Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.

would not immediately cure his blindness or alleviate Plaintiff's pain, even though it may be a first step in acquiring the desired surgery. Plaintiff has not shown that the first VEP test was conducted in a faulty manner or that its results are unreliable. Plaintiff also has not convinced the Court that the course of treatment that he requests would be more effective than his current course of treatment.

It should also be noted that the suggestions of Dr. Alberts and Dr. Fix in 2010 and early 2011 were followed by Dr. Szoke when he in fact requested that Plaintiff be transferred to the Medical Referral Center for additional surgery (and presumably examination by a corneal specialist prior to that surgery). However, because Plaintiff failed the VEP test, which was apparently a threshold requirement for transfer and additional treatment, Dr. Szoke's request was denied. Plaintiff has presented no additional evidence that after the Summer of 2011 there has been a change in his circumstances such that an additional transfer request should be made. Indeed, the only evidence presented is Dr. Melton's treatment notes that no additional treatment, other than medication, is currently warranted, that Plaintiff's condition is not worsening, and notes that Plaintiff is, perhaps, exaggerating his symptoms. Thus, there is no immediacy to Plaintiff's request for injunctive relief other than his own subjective assertions that his condition is worsening. While Plaintiff is certainly is capable of determining his pain level and his ability to see, his assertions of a worsening condition are belied by the medical record. For these reasons alone, Plaintiff's request for injunctive relief should be denied.

Finally, the Court is also required to weigh the harms to the parties and the public interest. Defendant appropriately notes that Plaintiff's original requested relief would not harm Defendants (although they would be unable to comply with such an injunction) but may burden the Bureau of Prisons with the costs associated with inmate transfer and surgery. In light of Plaintiff's new

request for relief, the Court cannot find that the Defendants would be particularly burdened with again recommending to the OMDT that Plaintiff be transferred – other than the harm associated with recommending a course of treatment that they do not believe is necessary. There also was no evidence of the cost associated with conducting another VEP test (although the test was performed at the St. Louis University Medical Center). The balance of harms, then would not weigh in favor of Defendants. The Court is also mindful that the public has a significant interest in ensuring that prisoners are provided adequate healthcare. These considerations, however, do not overshadow this Court's finding that there is no reasonable likelihood that Plaintiff will prevail on the merits and that the irreparable harm identified by Plaintiff would be cured by the granting of an injunction.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for a Preliminary Injunction filed by Plaintiff, Brock E. Okennard on January 17, 2013 (Doc. 42) be **DENIED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 11, 2013**

                                                    **DONALD G. WILKERSON**
                                                    **United States Magistrate Judge**