## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BROCK E. OKENNARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 12-51-GPM |
| | ) |
| DAVID SKOZE, et al., | ) |
| | ) |
|     Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

    This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 54), recommending that Plaintiff's motion for a preliminary injunction be denied (Doc. 54). Plaintiff, Brock E. Okennard, is currently incarcerated at the United States Penitentiary in Marion, Illinois ("USP-Marion"). He filed the instant action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants violated his constitutional rights when they acted with deliberate indifference to his serious medical needs. Plaintiff suffers from a degenerative eye condition known as Keratoconus in both eyes, and he alleges that he needs a corneal transplant to treat his condition. Plaintiff also alleges that Defendants, who are medical providers at USP-Marion, refuse to schedule the surgery or transfer him to a federal medical facility where he can receive adequate medical care for his eye condition.

    On January 17, 2013, Plaintiff filed a motion seeking a preliminary injunction that would compel Defendants to transfer him to a federal medical facility for evaluation and treatment by a

corneal specialist (Doc. 42). On February 5, 2013, Magistrate Judge Wilkerson held a hearing on Plaintiff's motion (Doc. 53). At the hearing, Plaintiff modified his requested relief and asked for an order compelling Defendants to administer a Visual Evoked Potential Test ("VEP Test"), which would then be used to determine whether Plaintiff is eligible for corneal transplant surgery on either eye (Doc. 54).

Magistrate Judge Wilkerson issued his Report and Recommendation and found that Plaintiff failed his burden of establishing the elements required to obtain a preliminary injunction, and recommended denying Plaintiff's motion (Doc. 54). Plaintiff filed a timely objection to the Report and Recommendation (Doc. 56), to which Defendants filed a timely response (Doc. 62). Defendants then filed a motion requesting leave to supplement the record with newly discovered factual information relevant to the Plaintiff's request for a preliminary injunction (Doc. 63). With leave of the Court, Defendants filed a supplemental brief and two new exhibits, to which Plaintiff filed a response (Docs. 69, 71, 72).

Since timely objections have been filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. §§ 636(b)(1)(B), (C), FED. R. CIV. P. 72(b); SDIL-LR 73(1)(b); *Harper v. City of Chicago Heights* 824 F. Supp. 786, 788 (N.D. Ill. 1993). In doing so, the Court "need not conduct a new hearing on the entire matter, but must give 'fresh consideration to those issues to which *specific* objections have been made.'" *Id.* (emphasis added) (citations omitted). In doing so, the Court has the discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The matter is ripe for ruling, and for the following reasons, the Court adopts Magistrate Judge Wilkerson's Report and Recommendation.

**DISCUSSION**

A. **Legal Standard for Obtaining a Preliminary Injunction**

In order to obtain a preliminary injunction, Plaintiff had the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. *Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012), *citing Am. Civil Liberties Union of Ill. v. Alvarez,* 679 F.3d 583, 589–90 (7th Cir. 2012). In the context of prisoner litigation, the scope of the Court's authority to enter an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). *See also Westefer,* 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

Here, Plaintiff objected to Magistrate Judge Wilkerson's findings that Plaintiff was unlikely to succeed on the merits of his deliberate indifference claim, and that he was unlikely to suffer irreparable harm without the injunction (Doc. 56). The Court will now review the portions of Magistrate Judge Wilkerson's Report and Recommendation pertaining to those objections.

B. **Plaintiff Okennard is Unlikely to Succeed on the Merits**

To establish an Eighth Amendment claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel.*

*Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), *citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). Second, the plaintiff must demonstrate that a state official acted with a sufficiently culpable state of mind. *Greeno*, 414 F.3d at 653. A prisoner must demonstrate that the prison official "knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* The Seventh Circuit has held that "a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006), *citing Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir.2001). Rather, in order "[t]o infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 397.

Plaintiff generally objected to Magistrate Judge Wilkerson's conclusion that he is unlikely to succeed on the merits of his claim for deliberate indifference (Doc. 62). Plaintiff specifically objected to Magistrate Judge Wilkerson's findings regarding his current treatment to the extent that the findings conclude the treatment Plaintiff is receiving is adequate (Doc. 62). Plaintiff also objected to Magistrate Judge Wilkerson's citation to medical records from 2007 and 2008 indicating that corneal transplant surgery was not recommended, and to Dr. Derek Melton's January 2013 note indicating there was "no obvious need for anything other than the [prescribed

medications]" (Doc. 62).

The crux of Plaintiff's objections is that he believes the treatment he is currently receiving is inadequate, and therefore, he is likely to succeed on the merits of his deliberate indifference claim. For the purposes of this discussion, the Court will assume that Plaintiff's medical condition was sufficiently serious. Having considered Plaintiff's objections, the Court agrees with Magistrate Judge Wilkerson that Plaintiff is unlikely to succeed on the merits of his claim because there is no indication in the record that Defendants were deliberately indifferent to Plaintiff's needs.

Plaintiff has received, and continues to receive, a substantial amount of medical care for his eye condition (Doc. 54). Plaintiff has regular optometry consultations with Dr. Derek Melton, various prescription eye drops, and custom contact lenses designed to treat Keratoconus (Doc. 54). However, Plaintiff contends that the treatment he is currently receiving is not adequate. He states that the physician currently treating him, Dr. Derek Melton, is not a corneal specialist qualified to evaluate an adequate course of treatment for Plaintiff (Doc. 62). Plaintiff also states that the contact lenses and eye drops that he is currently being treated with have not corrected his vision, his eyesight has continued to deteriorate, and he is still experiencing pain (Doc. 62). While Plaintiff believes he should be evaluated by a corneal specialist and needs a corneal transplant, the Eighth Amendment does not confer a constitutional right on inmates to demand a certain specialist or demand specific care. *Kendrik v. Frank,* 310 F. App'x 34, 38 (7th Cir. 2009), *citing Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Dr. Melton is an optometrist with experience treating patients with traumatic eye injuries, including corneal transplant patients, both inside and outside the prison (Docs. 47-2, 47-6). Contrary to Plaintiff's assertions that his eye condition is

worsening with the current treatments, his medical records show that his condition has remained stable, and has not further deteriorated (*See, e.g.,* Doc. 47-6). Plaintiff's medical records also indicate that when Plaintiff used his eye medications as prescribed, doctors observed an improvement in the condition of his eyes, and he self-reported an improvement in his levels of pain and discomfort (*See, e.g.,* Doc. 47-6).

It should come as no surprise that the current treatments have not actually corrected Plaintiff's vision or eased his pain because Plaintiff refuses to use them. Plaintiff's medical records are rife with indications that Plaintiff did not wear his contacts lenses or use his eye drops as prescribed (Docs. 47-6, 47-7, 47-8, 47-9). In February 2013, prison officials found a garbage bag in Plaintiff's cell containing multiple boxes, bottles, and tubes of each of his active prescriptions for his eyes that were still factory-sealed (Doc. 71). In short, Plaintiff's refusal to comply with his currently prescribed treatments undoubtedly limits their effectiveness, but that does not mean that the treatments are wholly inadequate and inappropriate for Plaintiff's eye condition.

Plaintiff also contends that Defendants refusal to follow the recommendations of Dr. Fix and Dr. Alberts to schedule Plaintiff for corneal transplant or evaluation by a corneal specialist is evidence of Defendants' deliberate indifference (Docs. 42, 62). However, in May 2011, Dr. Skoze acted on the recommendations of Dr. Fix and Dr. Alberts and issued a referral request on Plaintiff's behalf seeking to have Plaintiff transferred to a facility where he could receive a second corneal transplant of the left eye and he could be evaluated for a corneal transplant of his right eye (Doc. 47-2). The Bureau of Prisons ("BOP") denied the request and stated it would be reconsidered once Plaintiff had taken a Visual Evoked Potential ("VEP") examination and

Plaintiff was compliant with current treatments (Doc. 47-2). In June 2011, Dr. Skoze arranged for the VEP test to be conducted at St. Louis University Medical Center (Doc. 47-2). Plaintiff claimed he could not see the red dot, and for this reason, it was determined that Plaintiff was not a good candidate for corneal transplants (Doc. 47-2). Since that time, Dr. Melton has continued to monitor Plaintiff's eye condition and assess his candidacy for surgery (*See* Doc. 47-6). According to Dr. Skoze, he has not scheduled Plaintiff for another VEP test despite Plaintiff's demands, because optometry consultations continue to indicate Plaintiff is not a candidate for a corneal transplant based upon his physical examinations and Plaintiff's non-compliance with current recommended treatments (Doc. 47-2). Therefore, the recommendations of Dr. Fix and Dr. Alberts establish only a difference of opinion from that of Dr. Melton, Dr. Skoze, and the BOP concerning Plaintiff's medical condition and the appropriate course of treatment. A mere difference of professional opinion does not, however, show that Defendants were deliberately indifferent to Plaintiff's needs. *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006)

The Court agrees with Magistrate Judge Wilkerson's conclusion that Plaintiff is unlikely to succeed on the merits because "Plaintiff will only be able to show that he is unhappy about his course of treatment . . . and that he wants more aggressive treatment; not that Defendants are deliberately indifferent to his needs" (Doc. 54). As previously stated, Plaintiff has received, and continues to receive, a substantial amount of medical care from Defendants for his eye condition. "What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Plaintiff's assertion that his condition necessitated different treatment boils down to an unsubstantiated disagreement with Defendants' professional judgment. It is

well-established that an inmate's mere disagreement with the course of his medical treatment does not constitute an Eighth Amendment claim of deliberate indifference. *Snipes*, 95 F.3d at 591.

The Court finds there is no basis for a conclusion that the treatment Plaintiff is currently receiving is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. Therefore, the Court agrees with Magistrate Judge Wilkerson's conclusion that Plaintiff has not met his burden of establishing that he is likely to succeed on the merits of his § 1983 claim.

**C.  Plaintiff Okennard is Not Likely to Suffer Irreparable Harm**

Plaintiff objected to Magistrate Judge Wilkerson's finding that he is not likely to suffer irreparable harm without the injunction (Doc. 56). Plaintiff acknowledges that the VEP test will not cure his eye condition, but argues that it is a prerequisite to an evaluation by a corneal specialist, which is necessary to stop and possibly correct Plaintiff's loss of vision (Doc. 56). Plaintiff also objected to any finding that Plaintiff "failed" the VEP test and any suggestion that a second VEP test would not yield measurements (Doc. 56).

Having considered Plaintiff's objections, the Court agrees with Magistrate Judge Wilkerson that Plaintiff's medical records do not support Plaintiff's allegations of irreparable harm. The records demonstrate that Plaintiff's eye condition is "chronic," and he has been living with it for a number of years (*See* Docs. 47-6, 47-7, 47-8, 47-9). Plaintiff's medical records also indicate that when Plaintiff used his eye medications as prescribed, doctors observed an improvement in the condition of his eyes, and he self-reported an improvement in his levels of pain and discomfort (*See, e.g.* Doc. 47-6). Additionally, Dr. Fix and Dr. Alberts were each only able to speculate that Plaintiff's vision "may" continue to deteriorate if he does not receive an evaluation

by a corneal specialist and/or corneal transplant surgery (Docs 42-2, 42-3). The only evidence to support Plaintiff's allegations of irreparable harm are his own assertions, however, Plaintiff's assertions simply cannot be credited. According to the medical records submitted to the Court, since his initial corneal transplant in 2006, numerous doctors have accused Plaintiff of malingering, exaggerating his symptoms, and feigning blindness (*See* Docs. 47-6, 47-7, 47-8, 47-9) More than one doctor has noted that Plaintiff's reports of pain simply do not correspond with the results of physical examinations (Docs. 47-6, 47-9). Therefore, the Court finds there is no evidence that Plaintiff's condition has worsened or will worsen if the VEP test is not administered.

The Court also agrees with Magistrate Judge Wilkerson that an injunction mandating the administration of the VEP test will not directly address the irreparable harm Plaintiff alleges. The VEP test is not a cure for Plaintiff's ailment. Moreover, an injunction mandating the administration of the VEP test will not even guarantee that the BOP will approve Plaintiff's requests for an evaluation by a corneal specialist or corneal transplant surgery. The BPO stated that the VEP test is not the only prerequisite Plaintiff must meet before it will approve his request (*See* Doc. 47-2). Plaintiff must also show he is compliant with his current treatments (Doc. 47-2). Given Plaintiff's extensive history of non-compliance, there is a very real possibility that an injunction mandating the administration of the VEP test will not advance Plaintiff's cause.

Therefore, the Court agrees with Magistrate Judge Wilkerson's conclusion that Plaintiff has not met his burden of producing evidence sufficient to show that he would suffer irreparable harm absent a preliminary injunction.

## CONCLUSION

For the reasons set forth above, Plaintiff's objections to the Report and Recommendation are **OVERRULED**. The Report and Recommendation of Magistrate Judge Wilkerson (Doc. 54) is **ADOPTED** in full, and Plaintiff's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

DATED:   May 21, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge